UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Gary D., <br><br> Plaintiff, <br><br> v. <br><br> Michelle King, <br> *Acting Commissioner of Social Security*, <br><br> Defendant. | Case No. 24-cv-961 (JRT/DTS) <br><br> **REPORT AND RECOMMENDATION** |

## INTRODUCTION

Claimant Gary D. appeals the denial of his application for benefits under Title II of the Social Security Act. Compl. 1–2, Dkt. No. 1; Pl.'s Br. 3–4, Dkt. No. 10. His claim was denied initially and on reconsideration. Admin. Rec. 181–215, Dkt. No. 8 [hereinafter A.R.]. After a hearing, an Administrative Law Judge (ALJ) determined Claimant was not eligible for benefits. *Id.* at 216–37. Claimant requested review by the Social Security Appeals Council, which remanded the case back to the ALJ. *Id.* at 238–43. On remand, the ALJ determined for a second time that Claimant was not eligible for benefits. *Id.* at 14–45. Claimant argues the ALJ erred as a matter of law in two ways.[1] First, Claimant argues the ALJ erred by failing to properly evaluate the supportability and consistency

---

[1] Claimant asserts generally in the introduction to his brief that "the Commissioner's decision is not based on substantial evidence" but makes no specific argument about where substantial evidence is lacking. *See generally* Pl.'s Br. 3–15 (alleging two errors of law). This general assertion is not sufficient to disturb the ALJ's findings. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) ("To warrant reversal, [Claimant] must show that the ALJ's determination was not supported by substantial evidence. . . . And there is no way to satisfy that burden without grappling with the evidence: [Claimant] must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record. We cannot do that work for [him].").

of the state agency doctors' opinions. Pl.'s Br. 6. Second, Claimant argues the ALJ erred by failing to properly consider his mild mental limitations in formulating the RFC. *Id.* For the reasons set forth below, the Court recommends the ALJ's decision be affirmed.

## BACKGROUND

Gary D. applied for disability insurance benefits under Title II, alleging disability beginning November 1, 2018 due to stage three hodgkins lymphoma, depression, foggy brain, and back spurs. A.R. 499, 544. After the Social Security Administration denied his claims initially and on reconsideration, he requested a hearing before an ALJ. *Id.* at 181–215, 259–60. The ALJ held a hearing before issuing an unfavorable decision. *Id.* at 46–85, 216–37. The Appeals Council subsequently remanded the claim because the decision did not properly evaluate Claimant's symptoms according to the regulations. *Id.* at 238–43. On remand, the ALJ held two more hearings before issuing a second unfavorable decision. *Id.* at 14–45, 86–180.

In his second unfavorable decision—the decision at issue here—the ALJ proceeded through the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520. At step one, the ALJ found Claimant had not engaged in substantial gainful activity during the period between his alleged onset date of November 1, 2018, and his date of last insured (DLI) of March 31, 2019. A.R. 20. At step two, the ALJ determined that Claimant had the following medically determinable impairments during the relevant period: myopia, retinopathy, resolved retinal hemorrhage, serous otitis with mild positional vertigo, hypertension, hyperlipidemia, depression, anxiety, history of lymphoma status post chemotherapy, and obesity. *Id.* The ALJ nonetheless determined

Claimant did not have a severe impairment because, whether singly or in combination, his impairments did not significantly limit Claimant's ability to perform basic work-related activities for twelve consecutive months. *Id.* at 21. Therefore, the ALJ found Claimant was not disabled. *Id.* at 37.

Claimant appealed this decision to the Appeals Council, which declined review. *Id.* at 1–6. Claimant now seeks judicial review under 42 U.S.C. § 405(g), requesting remand for further proceedings. Pl.'s Br. 3, 15.

## ANALYSIS

### I. Standard of Review

The Commissioner's denial of disability benefits is subject to judicial review. 42 U.S.C. § 405(g). The Court's task is to determine whether the ALJ followed legal requirements and whether the ALJ's findings of fact are supported by substantial evidence in the record as a whole. *See Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010); *see also Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018). This Court can affirm, modify, or reverse the Commissioner of Social Security's decision with or without remand. 42 U.S.C. § 405(g).

A court's review for legal error includes ensuring that the ALJ properly considered and articulated the medical opinion evidence. *See* 20 C.F.R. § 404.1520c. When evaluating medical opinions and prior administrative medical findings, the ALJ must articulate the factors he used to evaluate the persuasiveness of each medical source. 20 C.F.R. § 404.1520c(a-b). At a minimum, the ALJ must explain how he considered the opinion's supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability focuses on the source itself. The more a source's objective evidence and

explanations support a medical opinion, the more persuasive is the opinion. *Id.* § 404.1520c(c)(1). Consistency compares a source to the record as a whole. The more consistent the opinion is with evidence from other sources, both medical and nonmedical, the more persuasive is the opinion. *Id.* § 404.1520c(c)(2). The failure to consider supportability and consistency of a medical source's opinions is legal error. See *Lucas v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020).

In the absence of legal error, a court must affirm an ALJ's decision if its findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is what "a reasonable mind would find . . . adequate to support the conclusion." *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)).

## II.   Analysis of State Agency Doctors Opinions

Two agency doctors opined on Claimant's disability determination: Dr. Paul Ossmann at the initial level, and Dr. Gregory Salmi on reconsideration. A.R. 190–91, 193–95, 209–12. Both doctors concluded that Claimant's condition warranted a "Medium" residual functional capacity (RFC). *Id.* at 191, 212. They also agreed that Claimant had additional postural limitations for occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling as well as an environmental limitation to avoid concentrated exposure to hazards. *Id.* at 194–95, 210–11. In reaching these conclusions, both doctors considered Claimant's medical evidence of record and his morbid obesity. *Id.* at 195, 211–12.

In his opinion, the ALJ acknowledged that Dr. Ossmann "noted the claimant's obesity and opined that the claimant could perform medium exertional work but with

additional postural limitations and limitation for hazards," and that "Dr. Salmi opined the same." *Id.* at 34. The ALJ found their opinions "not entirely persuasive" and "accord[ed] limited consideration" to them. *Id.* In explaining this finding, the ALJ wrote, "I have specifically considered supportability, consistency, specialization, and other factors. After considering these factors, I find that the opinions of the state agency physicians are not well supported in light of other substantial evidence in the record." *Id.* The ALJ went on to discuss evidence of Claimant's medical impairments he found did not support the agency doctors' opinions.

The ALJ discussed Claimant's obesity, chemotherapy symptoms from lymphoma, and other medically determinable impairments. That ALJ noted that while Claimant is morbidly obese, his BMI has been relatively stable and there is no indication obesity complicated his other impairments. *Id.* at 34–35. The ALJ stated that while Claimant received a lymphoma diagnosis in 2015 and underwent chemotherapy, Claimant's lymphoma was in remission from two years before the alleged onset date through Claimant's DLI. *Id.* at 34. The ALJ noted that Claimant visited his doctor shortly before the alleged onset date and reported that he did not have any remaining symptoms from cancer or chemotherapy. *Id.* at 35 (citing Ex. 6F at 83). Further, the ALJ noted that medical records show Claimant did not indicate he had symptoms from cancer or chemotherapy at any oncological visit between early 2017 and the DLI. *Id.* (citing Ex. 6F). The ALJ also referenced his assessment of Claimant's other impairments earlier in the decision and stated that these impairments—myopia, retinopathy, resolved retinal hemorrhage, serous otitis with mild positional vertigo, hypertension, hyperlipidemia, depression, and anxiety—were non-severe. *Id.* At the end

of this discussion, the ALJ concluded: "the claimant's obesity was not, in and of itself, a severe impairment and claimant had no notable symptoms from any other impairment prior to the DLI. Consequently, the DDS doctors finding any physical limitations was NOT consistent with this record." *Id.*

Claimant argues the ALJ erred as a matter of law by failing to evaluate the supportability and consistency of the state agency doctors' opinions. Pl.'s Br. 8. Claimant argues that although the ALJ *stated* that he considered the supportability and consistency of these opinions, the ALJ did not explain how he considered those factors. *Id.* at 10. With respect to supportability, Claimant asserts the ALJ included only a "perfunctory statement that he 'considered supportability.'" *Id.* at 11. With respect to consistency, Claimant asserts the ALJ did not reference which records allegedly undermined the doctors' opinions. *Id.* Claimant maintains that the ALJ's statement that he considered "other factors" is insufficient to allow the Court to determine which factors the ALJ considered or how he considered them. *Id.* at 11–12. Claimant argues that the ALJ would have found Claimant has a severe impairment if the ALJ properly evaluated and accepted the state agency doctors' opinions. *Id.* at 13. Claimant's arguments fail.

### A.   Supportability

An ALJ considers the supportability of a medical opinion by assessing how relevant the objective medical evidence and explanations in the source are to the conclusions in the opinion. *See* 20 C.F.R. § 404.1520c(c)(1). In other words, the ALJ analyzes how a source's own data and reasoning supports its ultimate opinions or findings. An ALJ must explain how he considered the supportability of a medical opinion, *id.* § 404.1520c(b)(2), but he can do so in a variety of ways. One such way is

6

by noting that a "physician did not provide a detailed explanation for the opinion." *Carol S.D. v. O'Malley*, No. 23-CV-1939, 2024 WL 4117487, at *5 (D. Minn. Sept. 9, 2024) (citation omitted).

Here, the ALJ took issue with the rationale the state agency physicians offered to support their opinion that Claimant had physical limitations—namely, his obesity. The ALJ specifically connected the doctors' underlying rationale to their ultimate conclusion by stating that consultants "noted the claimant's obesity and opined that the claimant could perform medium exertional work but with additional postural limitations and limitation for hazards." *Id.* at 34. After linking their rationale to their RFC conclusion, the ALJ explained that he found their opinions "not well supported in light of other substantial evidence in the record." *Id.* He went on to discuss evidence indicating Claimant's obesity was not severe, nor did it complicate any of his other medically determinable impairments. *Id.* at 35. By definition, non-severe impairments are those that "[do] not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. By identifying how the state agency consultants relied on Claimant's obesity in support of their conclusion that he had work-related physical limitations, then subsequently discussing evidence in the record supporting a finding that Claimant's obesity would not significantly limit his ability to perform basic work activities, the ALJ adequately articulated how he found the state agency physicians' rationale insufficient to support their opinions.

Claimant argues that ALJ's reference to "other substantial evidence in the record" when explaining why the physicians' opinions were unsupported only demonstrates that the ALJ considered consistency only and not supportability. Pl.'s Br. 10–11. The ALJ's

7

comparison of the agency doctor's opinions to other evidence in the record is certainly a proper consistency analysis. It does not follow, however, that there was no supportability analysis. In this case, the ALJ's reference to "other substantial evidence in the record" also expressed why he found the state agency physicians' opinions unsupported. Here the agency doctors did not themselves perform any medical services or testing. A.R. 190–91, 193–95, 209–12. Rather, they explained their findings and rationale in reference to Claimant's medical records. The ALJ found the agency doctors' rationale not well supported, which necessarily required reference to Claimant's medical records from other providers. A proper supportability analysis may include a consideration of an opinion-giver's reasoning and rationale, 20 C.R.F. § 404.1520c(c)(1), which in this case encompassed Claimant's medical records. *Cf. Travis P. v. Kijakazi*, No. CV 22-02245, 2023 WL 7017829, at *3 (D. Minn. Oct. 25, 2023) (finding an ALJ properly considered state agency consultants' opinions because the ALJ "explain[ed] that some of the limitations in those opinions were supported by and consistent with the record as a whole").

While the consistency and supportability analyses are somewhat overlapping in this case, the ALJ nonetheless demonstrated that he considered the supportability of the state agency physicians' opinions. *See Mario O. v. Kijakazi*, No. 21-cv-2469, 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022), *R. & R. adopted*, No. 21-cv-2469, 2023 WL 136590 (D. Minn. Jan. 9, 2023) ("No talismanic language is required for the ALJ to meet the requirements of § 404.1520c . . ."); *see also Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) (noting that the ALJ need only offer a supportability explanation that is "clear enough to allow for appropriate judicial review" (*quoting Sloan v. Saul*, 933 F.3d

8

946, 951 (8th Cir. 2019))). The ALJ expressly considered and adequately articulated his supportability analysis.

### B. Consistency

An ALJ considers the consistency of a medical opinion by evaluating how it aligns with other sources in the record, both medical and non-medical. *See* 20 C.F.R. § 404.1520c(c)(2). The more an opinion aligns with evidence from other sources, the more persuasive it will be. *Id.* Here, the ALJ explicitly found that the state agency physicians' conclusions—that Claimant had severe impairments warranting physical limitations—were not consistent with other evidence in the record. A.R. 35.

In reaching this finding, the ALJ discussed how the record supported a finding that Claimant's obesity was not a severe impairment and that Claimant did not have notable symptoms from his other impairments prior to the DLI. *Id.* The ALJ recognized Claimant was diagnosed with lymphoma in 2015 but noted Claimant had been in remission and had not reported any continuing symptoms to his oncologist during the relevant time period. *Id.* at 34–35. The ALJ noted that Claimant's other medical determinable impairments—myopia, retinopathy, resolved retinal hemorrhage, serous otitis with mild positional vertigo, hypertension, hyperlipidemia, depression, and anxiety—were not severe. *Id.* at 35. The ALJ acknowledged that Claimant was obese, but noted there was no evidence Claimant's obesity caused or complicated his medically determinable impairments. *Id.* The ALJ further noted that Claimant's primary care physician, Dr. Randall, opined in April 2019—just after the DLI—that Claimant did not have any physical impairments. *Id.* By discussing evidence from elsewhere in the

9

record that undermined the state agency doctors' RFC opinions, the ALJ demonstrated his consideration of consistency.

Claimant's argument that the ALJ conducted an erroneous analysis because "there is no reference to *what* records allegedly undermined the doctors' opinions" is unpersuasive. Pl.'s Br. 11. Contrary to Claimant's assertion that there is a complete absence of any reference to records, the ALJ did include citations to the record several times when discussing the evidence he found inconsistent with the doctors' opinions. *See* A.R. 35 (citing to Ex. 6F twice and Ex. 3F once). More to the point, in his consistency analysis the ALJ referred back to earlier parts of his opinion in which he cited office treatment records, hospital records, progress notes, medical opinion, and a psychological consultation when explaining why he found Claimant did not have any severe impairments or combination of impairments. *See id.* at 25–31 (citing Exs. 1F–7F, 9F–13F, 15F, 19F). Thus, in referring to findings he articulated earlier in his opinion (where he specifically identified the records on which he relied) the ALJ adequately demonstrated his consideration of consistency between the state agency doctors' opinions and other evidence in the record. See *Troy L. M. v. Kijakazi*, No. 21-CV-199, 2022 WL 4540107, at *12 (D. Minn. Sept. 28, 2022) ("While the ALJ may not have included citations to the record immediately following this conclusion, the ALJ's conclusion regarding the consistency factor—like the supportability factor—must be read in the context of the decision in its entirety.").

### C.  Other Factors

When an ALJ evaluates a medical opinion, the ALJ may, but is not required to, articulate how he considered factors beyond supportability and consistency. This could

10

include factors such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5). The ALJ is only required to explain how he considered supportability and consistency. *Id.* § 404.1520c(b)(2). Therefore, Claimant's argument that the ALJ did not explain how he considered other factors aside from supportability and consistency is without merit. Pl.'s Br. 11–12. An ALJ does not err by failing to articulate how he considered such additional factors.

### III.     Consideration of Claimant's Mild Mental Limitations

The ALJ's analysis ended at step two of the five-step sequential evaluation. A.R. 37. Claimant argues the ALJ erred as a matter of law by failing to account for Claimant's mild mental limitations in the RFC and failing to explain this omission. Pl.'s Br. 15. Defendant correctly points out that Claimant's argument fails because an ALJ must only evaluate a claimant's RFC after step three, and so here the ALJ did not need to evaluate Claimant's RFC. Def.'s Br. 9.

In evaluating whether a claimant is disabled, an ALJ follows the five-step sequential evaluation detailed in 20 C.F.R. § 404.1520. If the ALJ finds a claimant is not disabled at one of the steps, the analysis ends. *Id.* § 404.1520(a)(4). The ALJ will not proceed onto subsequent steps. Only after proceeding through step three, but before moving to step four, will the ALJ assess a claimant's RFC. *Id.* § 404.1520(4). Here, the ALJ found Claimant not disabled at step two of the analysis, A.R. 21–37, and therefore was not required to evaluate Claimant's RFC.

To be clear, the issue with Claimant's argument is not the assertion that an ALJ would need to consider his mild mental limitations if the ALJ were to assess his RFC.

11

Indeed, an ALJ must consider all of a claimant's medically determinable impairments—and the functional limitations from those impairments—when determining a claimant's RFC, including those that are mild. 20 C.F.R § 404.1545(a)(2); SSR 96-8P. The flaw in Claimant's argument here is that it simply was not required to consider Claimant's RFC. The failure to do so is not error.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1. Plaintiff's request to remand the Commissioner's decision [Dkt. No. 10] be **DENIED**.

2. Defendant's request to affirm the Commissioner's decision [Dkt. No. 12] be **GRANTED**.

Dated: February 3, 2025         s/David T. Schultz
                                DAVID T. SCHULTZ
                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court. It is not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).